UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLISON K. LASSEN,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:08-cv-1037

Honorable Paul L. Maloney

**REPORT AND RECOMMENDATION**

        This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed her applications for DIB and SSI benefits in September 2003, alleging a March 29, 2003 onset of disability.[1] (A.R. 82-84, 612-14). Plaintiff's claims were denied on initial review. (A.R. 51-55, 615-18). On November 1, 2005, plaintiff received a hearing before an ALJ. (A.R. 644-74). On February 24, 2006, an ALJ issued a decision denying plaintiff's claims. (A.R. 38-46, 628-36). On September 15, 2006, the Appeals Council vacated the ALJ's decision and remanded the matter for further administrative proceedings. (A.R. 72-74). On April 17, 2007, plaintiff received a second hearing before an administrative law judge (ALJ), at which she was represented by counsel.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n. 5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, October 2003 is plaintiff's earliest possible entitlement to SSI benefits.

(A.R. 675-709). On June 29, 2007, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 15-23). On September 12, 2008, the Appeals Council denied review (A.R. 7-9), and the ALJ's decision became the Commissioner's final decision.

On November 5, 2008, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. The three issues raised by plaintiff are as follows:

I. THE ALJ COMMITTED REVERSIBLE ERROR BY DISREGARDING THE OPINION OF THE TREATING PHYSICIAN THAT MS. LASSEN WAS UNABLE TO WORK.

II. THE ALJ ERRED BY FAILING TO ANALYZE THE CLAIM UNDER LISTING 12.04 AND IN FAILING TO FIND HER DISABLED PURSUANT TO IT.

III. THE ALJ ERRED IN FAILING TO FIND THAT PLAINTIFF'S OBESITY WAS A SEVERE IMPAIRMENT AND TO INCLUDE IT IN THE HYPOTHETICALS TO THE VOCATIONAL EXPERT.

(Plf. Brief at 9, 12, 15, docket # 7). Upon review, I find that only plaintiff's second argument has merit. The ALJ failed to make adequate findings at Step III of the sequential analysis.[2] This deficiency requires a remand, but does not justify an award of benefits by the court. The evidence

---

[2] "Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009); *see Lindsley v. Commissioner*, 560 F.3d 601, 602-03 (6th Cir. 2009).

plaintiff presented is well short of satisfying the demanding standard for entry of a judgment directing the Commissioner to award plaintiff benefits. *See Faucher v. Secretary of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also White v. Commissioner*, 312 F. App'x 779, 790 (6th Cir. 2009). Accordingly, I recommend that judgment be entered in plaintiff's favor vacating the Commissioner's decision and remanding this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within

which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

**Discussion**

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from her alleged onset of disability of March 29, 2003, through the date of the ALJ's decision. Plaintiff had not engaged in substantial gainful activity on or after March 29, 2003. (A.R. 17). Plaintiff had the severe impairments of an affective disorder, depression, and asthma. (A.R. 17). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 18). He found that plaintiff retained the following residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to work in a clean environment. She must avoid exposure to industrial chemicals. She is limited to work involving only one, two, or three step

instructions. She can perform work that requires only minimal contact with co-workers. She can perform work that requires brief and superficial contact with the general public.

(A.R. 18-19). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible:

> The claimant alleges breathing difficulties, but she has a very long history of smoking. Despite being questioned at the hearing, she refused to rate her migraine pain on the 1-10 pain scale and stated that she had never received emergency room or hospital treatment for pain. The claimant also testified that she had no side effects from medications. The claimant also testified that she strives to control her environment and manage her symptoms such as shopping in stores with which she is familiar. The claimant testified that she does dishes, vacuums, does laundry, watches television, drives, spends a couple of hours a day on the computer doing medical research, playing games, and using email. The claimant further testified that her inability to get along with others was a factor in not being able to work.
>
> * * *
>
> While the claimant is certainly restricted as to the types of work she is capable of performing due to the effects of her affective disorder and her asthma, objective medical evidence fails to establish that these impairments are of sufficient severity to preclude her ability to perform even the limited range of jobs identified by the vocational expert in his testimony. The medical record also indicates that the claimant has, at times, been non-compliant with her medical treatment recommendations that she stop smoking and lose weight. She alleges breathing difficulties, but she continues to smoke. The claimant was not a particularly impressive witness, and demonstrated a tendency to be evasive. She did not give a pain rating on a one to ten scale and her pain is isolated to migraines only.
>
> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

(A.R. 20-21). The ALJ found that plaintiff was unable to perform her past relevant work. (A.R. 21). Plaintiff was 44 years old on her alleged onset of disability and she was 47 years old as of the date of the ALJ's decision. Thus, at all times relevant to her claims for DIB and SSI benefits, plaintiff was classified as a younger individual. (A.R. 21). Plaintiff has a high school education and is able to communicate in English. (A.R. 21). The ALJ found that the transferability of jobs skills was not

material to a disability determination. (A.R. 21). The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 25,000 jobs in Michigan's lower peninsula that the hypothetical person would be capable of performing. (A.R. 703-04). The ALJ held that this constituted a significant number of jobs and found that plaintiff was not disabled. (A.R. 15-23).

### 1.

Plaintiff argues that the ALJ committed reversible error by "disregarding" a treating psychiatrist's opinion that she was unable to work. (Plf. Brief at 9). This argument is meritless. Plaintiff's hearing testimony established that Dr. Werner was no longer her treating psychiatrist.[3] Further, she testified that her few visits with Dr. Werner were of short duration and generally consisted of medication reviews:

| | | |
|---|---|---|
| Q | | [Y]ou didn't list Dr. W[e]rner as someone that you're receiving treatment from. Can you help me understand your relationship [with] Dr. Werner? |
| A | | Dr. Werner-North -- is no longer practicing. He's retired due to health reasons. |
| Q | | And when did Dr. Werner-North retire? |
| A | | I don't know. I wasn't seeing him on a regular basis because he was -- you literally couldn't get into him because they were short-staffed at [Montcalm] Center [for Behavioral Health] and with him being sick, you couldn't get appointments with him. They brought -- since brought in Miriam Adams and she [has] replaced hi[m]. |
| Q | | How often would you, would you have seen Dr. Werner? |

---

[3]Dr. Werner referred to himself as a "consulting" psychiatrist. (*See e.g.*, A.R. 222, 262).

> A   That was something that I worked on with my counselor. You didn't at that time get to see Dr. Werner unless your counselor recommended it.
>
> Q   And how many times did you see Dr. Werner?
>
> A   Maybe four or five times.
>
> Q   Was that for medication reviews?
>
> A   Yeah, primarily.
>
> Q   How long would you spend with Dr. Werner?
>
> A   I want to say like half an hour.

(A.R. 687-88).

Dr. Werner's June 21, 2005 notes contain the following statement: "She is in the process of applying for support from DHS and it is my opinion that she is unstable with regard to her medication condition and depression and is not able to work at this point." (A.R. 364). The ALJ did not "disregard" this statement. He found that Dr. Werner's opinion on the issue of disability, which is reserved to the Commissioner, was entitled to little weight:

> Dr. Werner, a treating psychiatrist[,] opined that the claimant was unable to work in June 2005, as she was "unstable with regard to medication condition." However, Dr. Werner has actually had very limited personal exposure to the claimant and he reported that she was appropriately dressed and groomed, tearful at times, but was able to express herself clearly. Dr. Werner noted that the claimant had failed on trials of antidepressants. Treatment notes [from] Olja Plasa, MSW, the claimant's longstanding counselor, reflect that the claimant was repeatedly described as warm, with good personal hygiene, goal-directed and pleasant. While the claimant has had some difficulty finding a medication regime[n] that works for her, she has made strides in therapy and group counseling (Exhibits 6F, 8F, 17F, and 21F). Although Dr. Werner is a treating physician, he sees the claimant very infrequently, and his conclusion that the claimant is not employable due to not being stable with respect to medication is not consistent with the totality of the medical evidence. The claimant's long-time therapist has not expressed such a finding of disability, nor has any other physician. Moreover, a finding of unemployable due to medication does not equate with total disability as defined by the Administration.

(A.R. 20).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner and a treating physician's opinion that a patient is disabled is not "giv[en] any special significance." 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Deaton v. Commissioner*, 315 F. App'x 595, 598 (6th Cir. 2009). Likewise, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirement of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009); *Deaton*, 315 F. App'x at 598; *Warner*, 375 F.3d at 390.

It is the ALJ's job to resolve conflicting medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971); *Mitchell v. Commissioner*, 330 F. App'x 563, 567-68 (6th Cir. 2009). Judicial review of the Commissioner's final administrative decision does not encompass resolving such conflicts. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see Price v. Commissioner*, 342 F. App'x 172, 175-76 (6th Cir. 2009). The treatment relationship is one of the factors that the ALJ considers in determining what weight to give a medical opinion. Generally, more weight is given to the medical opinions of treating sources. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the ALJ finds that the treating source's opinions on the issues of the nature and severity of the claimant's impairments are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in the case record," the opinions are given controlling weight. *Id.*; *see Hensley v. Astrue*, 573 F.3d 263,

266 (6th Cir. 2009); *White v. Commissioner*, 572 F.3d 272, 285-86 (6th Cir. 2009). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Commissioner*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton*, 246 F.3d at 773; *see Kidd v. Commissioner*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on the claimant's reporting of her symptoms is not entitled to any particular weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Mitchell v. Commissioner*, 330 F. App'x at 569-70; *Smith v. Commissioner*, 482 F.3d 873, 876-77 (6th Cir. 2007).

Even when a treating source's medical opinion is not given controlling weight because it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the record, the opinion should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(d), 416.927(d); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006); *see also Anthony v. Astrue*, 266 F. App'x 451, 458-59 (6th Cir. 2008).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "The procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deem them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876.

I find no violation of the treating physician rule. This aspect of the ALJ's opinion is supported by more than substantial evidence and the ALJ complied with the procedural requirement of providing "good reasons" for the weight he gave to Dr. Werner's opinions. Dr. Werner barely qualified as a treating physician, and the record is devoid of any medical tests or findings that would support his naked opinion of disability.

**2.**

Plaintiff argues that the ALJ erred by not finding that her obesity[4] was severe impairment. (Plf. Brief at 15). The ALJ found at Step 2 of the sequential analysis that plaintiff had severe impairments of an affective disorder, depression, and asthma. (A.R. 17). The ALJ's failure to find additional severe impairments at Step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Simpson v. Commissioner*, 344 F. App'x 181, 190-91(6th

---

[4]Plaintiff presents a related argument that the ALJ's finding at Step 5 of the sequential analysis is not supported by substantial evidence because the hypothetical question that the ALJ posed to the VE did not include plaintiff's obesity. This report and recommendation does not address issues beyond the deficiency found at Step 3. However, plaintiff should recognize that a hypothetical question is not required to list the claimant's medical conditions, but is only required to reflect her functional limitations. *Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004).

Cir. 2009); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

**3.**

Plaintiff argues that the ALJ erred by "failing to analyze the claim under listing 12.04 and in failing to find [plaintiff] disabled pursuant to it." (Plf. Brief at 12-14). Upon review, I find that the ALJ's conclusory findings at Step 3 of the sequential analysis are so deficient that a judgment should be entered vacating the Commissioner's decision and remanding this matter to the Commissioner under sentence four[5] of 42 U.S.C. § 405(g) for further administrative proceedings.

The controlling legal authority is the Sixth Circuit's recent decision in *Rabbers v. Commissioner*, 582 F.3d 647 (6th Cir. 2009). In *Rabbers*, the Court of Appeals examined the administrative findings that reviewing courts should expect to find at Step 3 of the sequential analysis documenting the ALJ's application of the "special technique" for evaluating a claimant's mental impairments:

> At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." [20 C.F.R § 404.1520a(d)(2)]. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id.* § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled.
>
> Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.* § 404.1525(c)(3). A claimant must satisfy all of the criteria to meet the listing. *Id.* Under section 12.04 (Affective Disorders), for example, the so-called A criteria are satisfied by medical documentation of bipolar syndrome with a history of episodic periods. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. . . . The B criteria of both listings are

---

[5]A "sentence-four" remand results in the immediate entry of judgment and relinquishment of jurisdiction by the district court. *Marshall v. Commissioner*, 444 F.3d 837, 841 (6th Cir. 2006).

satisfied by a showing of at least two of the following functional limitations: 1) a marked restriction of activities of daily living, 2) marked difficulties in maintaining social functioning, 3) marked difficulties in maintaining concentration, persistence, or pace, or 4) repeated episodes of decompensation, each of extended duration. *Id.* If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and move on to steps four and five. 20 C.F.R. § 404.1520a(d)(3).

Importantly, the regulations require an ALJ to document the application of this special technique in the written decision. *Id.* § 404.1520a(e). Until 2000, an ALJ was required to complete a PRTF and append the form to the decision. *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. 50,746 (Aug. 21, 2000). Now, the regulations require only an ALJ's written decision to "incorporate the pertinent findings and conclusions based on the technique." 20 C.F.R. § 404.1520a(e)(2). The decision must refer to the "significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* The decision must also "include a specific finding as to the degree of limitation in each of the functional areas." *Id.* At step three, the ALJ's decision must "record the presence or absence of the criteria [of the listing] and the rating of the degree of functional limitation." *Id.* § 404.1520a(d)(2).

582 F.3d at 653-54. Here, the ALJ's opinion falls well short of satisfying these requirements. He did not document his application of the special technique. 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). He did not address the substance of any part of listing 12.04. Instead, the ALJ provided this perfunctory statement:

The medical evidence indicates that the claimant's impairments are "severe" within the meaning of the Regulations, but they are not "severe" enough to meet or medically equal either singly or in combination [] one of the impairments listed in Appendix I, Subpart P, Regulations No. 4.

(A.R. 18). The ALJ's failure to document his application of the special technique was error. *Rabbers*, 582 F.3d at 654.

The Sixth Circuit has instructed that reviewing courts "should generally exercise caution in conducting harmless error review in this context." *Rabbers*, 582 F.3d at 657-58. It is the Commissioner's job to make the factual findings based on the administrative record, and it is the

court's role to review those findings under a deferential substantial evidence standard. Departures from this framework should be relatively infrequent. The ALJ's failure to apply the special technique is inexplicable.[6] Defendant has not presented any argument that the ALJ's error was harmless.

I recommend that the court, in its discretion, decline to take up this issue *sua sponte* because it would not promote judicial economy. *Compare Rabbers*, 582 F.3d at 658-60. I further recommend that the court enter a judgment in plaintiff's favor vacating the Commissioner's decision and remanding this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

**Recommended Disposition**

For the reasons set forth herein, I recommend that judgment be entered in plaintiff's favor vacating the Commissioner's decision and remanding this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

Dated: February 17, 2010        /s/ Joseph G. Scoville
                                United States Magistrate Judge

---

[6] It is not this court's role to enforce the Appeals Council's orders, but it is appropriate to note that the Appeals Council's September 15, 2006 order expressly directed that the ALJ apply the special technique and make specific findings: "Upon remand the Administrative Law Judge will . . . [f]urther evaluate the claimant's mental impairment in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the discussion by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c)." (A.R. 73).

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).